IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| BRETT C. PENNINGTON, | ) | CASE NO. 12-80327-G3-13 |
| | ) | |
| Debtor, | ) | |
| | ) | |

### MEMORANDUM OPINION

The court has held an evidentiary hearing on confirmation of Debtor's amended Chapter 13 Plan (Docket No. 25) and the "Trustee's Motion to Dismiss or Convert to a Chapter 7" (Docket No. 20). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered denying confirmation, and denying without prejudice the motion to dismiss. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

Brett C. Pennington ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on June 26, 2012. William E. Heitkamp is the Chapter 13 Trustee.

Debtor is married to Deborah J. Pennington, and has been married to her since 1993. Together, Debtor and Mrs.

1

Pennington have two children living with them, Eric Pennington, age 18, and Alex Pennington, age 24. Debtor testified that he also has a 22 year old son. Deborah Pennington testified that she has a son from a previous marriage, Zachary Moffitt, age 28.

Debtor testified that he and Mrs. Pennington have maintained separate bank accounts and separate credit cards since they were married.

Debtor's plan calls for Debtor to make 60 payments of $160 per month to the Chapter 13 Trustee. The plan provides for disbursement (after deduction of the Chapter 13 Trustee's fee) to the Internal Revenue Service ("IRS") of $341.35, and the remainder to pay $8,295.66 to unsecured creditors. (Trustee's Exhibit 16).

The Chapter 13 Trustee objects to confirmation on grounds the plan does not meet the disposable income test of 11 U.S.C. § 1325(b). The Chapter 13 Trustee also has moved to dismiss on grounds the plan does not provide for payment in full of secured and priority claims.

Debtor's Schedule F indicates a total of $53,833.00 in unsecured claims. The claims register in the above captioned case indicates that unsecured claims totaling $40,576.92 have been filed. (Trustee's Exhibit 4).

Debtor's Chapter 13 Statement of Current Monthly Income

And Calculation of Commitment Period and Disposable Income ("B22C") reflects annualized current monthly income of $86,723.64 for a family of four.  The B22C indicates that the median family income for a family of four in Texas is $65,875.00.  The B22C indicates that Debtor has monthly disposable income of a negative $947.35.  (Trustee's Exhibit 13, Line 59).

The monthly disposable income listed in B22C includes a deduction of $300 per month for "Special Circumstances," consisting of a $300 monthly payment to IRS.  (Trustee's Exhibit 13, Line 57).  Debtor testified that, on the petition date, Debtor and Mrs. Pennington owed IRS $2,656.  He testified that, since the petition date, Mrs. Pennington has made payments directly to IRS, reducing their joint debt to IRS to $341.35.

The monthly disposable income listed in B22C includes deductions of $260.00 per month for installment payments on a 2005 Dodge Durango, and $83.70 per month for installment payments on a 2009 Buell motorcycle.[1]  (Trustee's Exhibit 13, Line 47.b.).  Debtor testified that he drives both the Dodge Durango and the

---

[1] The installment payment on the motorcycle is reflected in Debtor's Schedule J to be $162.00.  Debtor testified that the payment is in this amount.  The court notes that there were several apparent inaccuracies in the schedules, statement of financial affairs, and B22C filed by Debtor.  While the apparent inaccuracies are not pertinent to the court's consideration of the Trustee's disposable income objection to confirmation, Debtor and Debtor's counsel should be mindful of the need to make sure that these documents, which are signed under penalty of perjury, are correct and complete.

Buell motorcycle.  He testified that the Buell motorcycle is not necessary, but saves on gas.

The deductions from monthly disposable income listed in B22C include a deduction of $2,237.85 per month as a "Marital Adjustment."  The marital adjustment is based on an affidavit made by Deborah Pennington.  (Trustee's Exhibit 13, Line 19).  In the affidavit, she states, <u>inter alia</u>, that she makes payments to creditors from her own income totaling $2,537.85 per month.  (Trustee's Exhibit 15).  In an attachment to Mrs. Pennington's affidavit, she states that she makes monthly payments as follows:

| Payee | Monthly Amount |
|---|---|
| USAA Home Equity Loan | $400.57 |
| IRS | $300.00 |
| TDECU Parent Loan | $436.00 |
| Chase | $130.00 |
| Capital One | $250.00 |
| Wells Fargo Visa | $200.00 |
| USAA | $100.00 |
| TDECU | $110.00 |
| TDECU | $ 20.00 |
| WFNNB/Samuels | $253.00 |
| Wells Fargo Education Financial | $245.53 |
| Dillards | $ 30.00 |
| Valero | $ 50.00 |
| The Facts | $ 12.75 |

(Trustee's Exhibit 14).

With respect to the entries for TDECU Parent Loan, in the amount of $436.00 per month, and Wells Fargo Education Financial, in the amount of $245.53 per month, Deborah Pennington testified that the payments are for student loans for her son, Zachary Moffitt, who is not Debtor's son.  Trustee stipulated

4

that these payments are appropriately considered under the marital adjustment in Line 19 of the B22C.

With respect to the entry for USAA Home Equity Loan, in the amount of $400.57 per month, Deborah Pennington testified that the house occupied by Debtor, Mrs. Pennington, and two of their sons is collateral for the loan. Debtor testified that the home is encumbered by a mortgage, on which both Debtor and Mrs. Pennington are liable.

Wells Fargo Bank, N.A., has filed a proof of claim, asserting a claim in the amount of $39,111.80, secured by the home. Wells Fargo attached to its proof of claim a note, dated April 25, 2003, in the original principal amount of $58,300. In its proof of claim, Wells Fargo asserts a prepetition arrearage of $108.68.

Mrs. Pennington testified that the entries for Chase, Capital One, Wells Fargo Visa, USAA (the account that is not listed as a home equity loan), one TDECU account,[2] WFNNB/Samuels, Dillards, and Valero, are her credit cards. She testified that she used the Chase credit card (which she testified has a balance in excess of $5,000), the Capital One credit card (which she testified has a balance in excess of $8,000), the Wells Fargo Visa (which she testified has a balance in excess of $8,000), the

---

[2] Mrs. Pennington testified that the second TDECU account has been paid in full.

USAA credit card (which she testified has a balance in excess of $20,000), and the TDECU credit card (which she testified has a balance in excess of $4,000) for medical and dental expenses for herself and her sons, as well as for drug and alcohol rehabilitation and associated court costs for her three oldest sons, and for expenses associated with dual-credit advanced placement classes taken by her 18 year old son.

With respect to the entry for WFNNB/Samuels, Mrs. Pennington testified that the card was used to purchase wedding rings for her son, Zachary Moffitt. She testified that the payment has been reduced to $53 per month, and that her son mails her $53 each month, in order to make the payment.

With respect to the entry for Dillards, Mrs. Pennington testified that the account has been paid off.

With respect to the entry for Valero, Mrs. Pennington testified that there is an approximate balance of $600. She testified that she currently uses the Valero credit card to buy gas for her own vehicle, and for that of her 18 year old son.

Debtor's Schedule I reflects that Debtor has monthly gross income of $3,182.01 from employment, and $485.00 from operation of a business. Mrs. Pennington has monthly gross income of $5,833.34. After deductions for taxes and insurance, Debtor and Mrs. Pennington have a combined net average monthly income of $7,413.39. (Trustee's Exhibit 6).

Debtor's Schedule J reflects that Debtor and Mrs. Pennington have expenses of $7,257.96 per month. These include, <u>inter</u> <u>alia</u>, $780.00 per month for transportation, $300.00 per month for payments to IRS, and $461.00 per month in business expenses. (Trustee's Exhibit 7).

Debtor testified that the $461.00 per month in business expenses represents the cost of gasoline he buys in order to play in a band. He testified that the $461.00 per month expense is in addition to the $780.00 per month transportation expense.

Debtor's B22C reflects that Debtor has monthly income of $485.00 and expenses of $461.00 from playing in the band.

Debtor testified that, after expenses, he makes approximately $200.00 per month playing in the band.

Debtor testified that he and Mrs. Pennington were current on their home mortgage on the date the petition in the instant case was filed. He testified that, on the petition date, he was current in making payments on the 2005 Dodge Durango and the 2009 Buell motorcycle.[3]

## Conclusions of Law

Section 1325(b) of the Bankruptcy Code provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the

---

[3] Indeed, the court notes that, in Debtor's plan, Debtor identifies that all secured debts were current on the petition date. (Docket No. 25).

plan, then the court may not approve the plan unless, as of the effective date of the plan -

>   (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

>   (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended -

>   (A)  (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
>   (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) (!1) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
>   (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the

debtor has current monthly income, when multiplied by 12, greater than -

    (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

    (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

(4) For purposes of this subsection, the "applicable commitment period" -

    (A) subject to subparagraph (B), shall be -

        (i) 3 years; or

        (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than -

            (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

            (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

            (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; and

> (B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

11 U.S.C. § 1325(b).

In the instant case, the Chapter 13 Trustee has objected to confirmation of the plan. The plan does not provide for payment in full of all unsecured claims. Thus the plan may be confirmed only if the plan provides that all of Debtor's projected disposable income in the applicable commitment period will be applied to make payments to unsecured creditors under the plan.

The term "projected disposable income," which appears in Section 1325(b)(1)(B) of the Bankruptcy Code, is not defined in the Bankruptcy Code. The term "disposable income" is defined as identified above, in Section 1325(b)(2) of the Bankruptcy Code.

The term "current monthly income" is defined in Section 101(10A) of the Bankruptcy Code:

> The term "current monthly income" –
>
> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –
>
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

>    (ii) the date on which current income is
>    determined by the court for purposes of this title
>    if the debtor does not file the schedule of
>    current income required by section
>    521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than
> the debtor (or in a joint case the debtor and the
> debtor's spouse), on a regular basis for the household
> expenses of the debtor or the debtor's dependents (and
> in a joint case the debtor's spouse if not otherwise a
> dependent), but excludes benefits received under the
> Social Security Act, payments to victims of war crimes
> or crimes against humanity on account of their status
> as victims of such crimes, and payments to victims of
> international terrorism (as defined in section 2331 of
> title 18) or domestic terrorism (as defined in section
> 2331 of title 18) on account of their status as victims
> of such terrorism.

11 U.S.C. § 101(10A).

When a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation. Hamilton v. Lanning, --- U.S. ----, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010).

A debtor's "disposable income" calculated under Section 1325(b)(2) and multiplied by the applicable commitment period is presumptively the debtor's "projected disposable income" under § 1325(b)(1)(B), but any party may rebut this presumption by presenting evidence of present or reasonably certain future events that substantially change the debtor's financial situation. In re Nowlin, 576 F.3d 258 (5th Cir. 2009).

In the instant case, Debtor has understated his current monthly income in his B22C. Debtor's testimony indicates that Debtor receives $200.00 monthly, in net income from playing in a band. That amount exceeds the $24.00 difference stated on B22C between Debtor's income and expenses from operation of a business by $176.00.

With respect to the expenses listed in B22C, a plain reading of Section 101(10A)(B) indicates that current monthly income must include amounts regularly paid by any entity, including a non-filing spouse, for household expenses of the debtor. A plain reading of the statute also reveals a clear distinction between the household expenses of the debtor in an individual filing and the household expenses of the debtor and the debtor's spouse in a joint filing. In an individual bankruptcy filing, current monthly income includes a non-filing spouse's regular payments toward "the household expenses of the debtor," whereas in a joint filing, current monthly income includes the regular contributions from any entity toward the "household expenses ... of the debtor and the debtor's spouse." In re Toxvard, 2013 WL 122508 (Bankr. D. Colo. 2013).

The key inquiry for determining the propriety of a marital adjustment on Line 19 is the extent to which a non-filing spouse's income is not regularly contributed or dedicated to the household expenses. If the non-filing spouse's income is not

12

regularly contributed for household expenses, it should not be included in calculating a debtor's disposable income and should be "deducted" from current monthly income as a marital adjustment. In re Malewicz, 457 B.R. 1 (Bankr. E.D.N.Y. 2010); In re Charles, 375 B.R. 338 (Bankr. E.D. Tex. 2007); In re Paliev, 2012 WL 3564031 (Bankr. E.D. Va. 2012).

In the instant case, Trustee has conceded that the TDECU Parent Loan, in the amount of $436.00 per month, and Wells Fargo Education Financial, in the amount of $245.53 per month, should be deducted from current monthly income.

With respect to the USAA Home Equity Loan, in the amount of $400.57, the payment is for household expenses, because it is purportedly secured by an interest in the home which Debtor claims as a homestead.[4]  The court concludes that this payment should not be deducted from current monthly income.

With respect to the IRS debt, the debt has been nearly paid in full.  The plan provides for payment of the remainder in full.  The court concludes that this expense, in the amount of $300 per month, should not be deducted from current monthly income.

With respect to the TDECU loan, in the amount of $20.00 per month, in light of Mrs. Pennington's testimony that the loan

---

[4] The court makes no finding or conclusion about the validity of the purported security interest.

has been paid in full, the amount should not be deducted from current monthly income.

With respect to the WFNNB/Samuels line item, Mrs. Pennington testified that the amount has been reduced from the $253.00 indicated in her affidavit to $53.00, and that the $53.00 is not paid from her income, but rather she acts as a conduit for payments from her son. The court concludes that the $253.00 should not be deducted from current monthly income.

With respect to Mrs. Pennington's credit card debts, the evidence is inconclusive at this time. It is clear that some of the expenses are regularly contributed to Debtor's household (including Debtor's sons). However, the amount of this contribution is not clear.

The aggregate of the items which should not have been deducted from current monthly income, and as to which an amount can be determined, total $973.57 per month. Debtor additionally has $176.00 per month in income which was not adequately disclosed in the B22C. Thus, Debtor has a minimum of $1,149.57 more than shown in B22C as disposable income. Debtor's B22C shows a negative $945.35 as disposable income. The court concludes that Debtor's projected disposable income is, at a minimum, $204.22 extra per month, and is likely higher, due to the inconclusive evidence as to the extent to which the expenses incurred on Mrs. Pennington's credit cards were incurred for

14

Debtor's household expenses. The plan devotes only $160.00 per month to the payment of all creditors. Thus, the plan fails to provide that all of Debtor's projected disposable income will be paid to unsecured creditors. The court concludes that the plan should not be confirmed.

On the question of Trustee's motion to dismiss, Trustee presented no evidence as to the failure of Debtor to provide in the plan for all secured and priority claims. Nonetheless, the court has reviewed the claims as filed, and, in the absence of objection to the claim, the plan does fail to provide in full for the secured arrearage claim of Wells Fargo.[5] However, in light of the other issues in this case, the court will not dismiss at this time, but rather will allow Debtor to amend the plan in accordance with this opinion.

Based on the foregoing, a separate Judgment will be entered denying confirmation, and denying without prejudice the motion to dismiss.

Signed at Houston, Texas on March 21, 2013.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[5] Although not raised in Trustee's objection, failure of the plan to provide for this claim is an additional reason the plan cannot be confirmed.